# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION GENTRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-01250-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Marion Gentry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 4, 5.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on March 1, 2014, and an application for disability insurance benefits on March 3, 2014. AR 225-30, 231-32, 233-34.[2] Plaintiff alleged that she became disabled on May 1, 2012, due to memory loss, sleep apnea, arthritis in hands and knees, lower back pain, neuropathy, gallbladder infection, high blood pressure, diabetes and a fractured left toe. AR 35, 250-51. Plaintiff's applications were denied initially and on reconsideration. AR 142-46, 149-53, 155-59. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ G. Ross Wheatley held a hearing on March 24, 2016, and issued an order denying benefits on May 4, 2016. AR 10-24, 31-81. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on March 24, 2016, in Stockton, California. Plaintiff appeared with her attorney, Reed Wickham. Impartial Vocational Expert ("VE") Paul Steven Ramirez also appeared. AR 13, 33.

In response to questioning by the ALJ, Plaintiff testified that she graduated high school and attended approximately three years of college at various schools. She also attended the University of Phoenix and, in October 2015, received a degree in business management. She spent much of her working career as a buyer in the high-tech industry. In 2014, she applied for unemployment, but did not remember certifying on the form that she could work. AR 38-40.

Plaintiff confirmed that she suffers from memory issues, obstructive sleep apnea, diabetes with neuropathy, gallbladder issues, arthritis, lower back pain, a broken toe on her left foot and gastritis. She also had gastric bypass surgery in July 2015, and a total knee replacement a few weeks before the hearing. AR 41. Plaintiff confirmed that she will have surgery on her other knee, as well. AR 70.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff reported that her knees and back, along with her sleep apnea, cause her the most problems in her daily life. AR 42.

Plaintiff testified that she was walker, but her knees would pop. She stopped walking about one to two years prior the hearing. However, physical therapy records showed she walked recently, and Plaintiff confirmed that she walked with friends. Plaintiff also testified that her doctor told her that she needed to exercise her knees, thighs and legs to make them strong for surgery, so she used the elliptical and bike at the gym with no knee pain. AR 42-43. Plaintiff reported that it was hard for her to stand up on her own after sitting down, and prior to surgery she was taking pain medication for her knee, which "really, really helped." AR 43.

When asked about her sleep apnea, Plaintiff testified that she used a CPAP machine. She stopped using it after the gastric bypass but is back on the machine after knee surgery. AR 45-47. When asked about her diabetes, she reported that she never took any pills or insulin. She only checked her blood two or three times per day. She is no longer diabetic. AR 47-48.

When asked about her back, Plaintiff reported taking pain medicine for it. AR 48-49. Plaintiff also reported that her back "got better" while she was in therapy twice week, and as long as she was doing therapy, she was fine. AR 49.

When asked about her high blood pressure, Plaintiff testified that she is taking medication for it and it is very steady. AR 49-50.

When asked about her memory issues, Plaintiff testified that she sees a psychologist once a month and has been doing so for the last two years. She was taking antidepressants but started to wean herself off them. Her psychologist has helped her, calming her down emotionally and mentally. AR 50-51.

When asked about a typical day prior to knee surgery, Plaintiff testified that she could bathe, shower, dress, prepare food, do dishes and do laundry. She would get up in the morning, go to the gym, come home and sit on the couch until her granddaughter came home. She also would help her granddaughter with homework. At the gym, she would do the elliptical, bike and leg press. When she was going to school, she did internet research and worked with a team on assignments for almost three

years. She also would give presentations with the team using cue cards. She attended school one night a week for four hours. AR 52-57, 63.

Plaintiff further testified that she will go on walks with her granddaughter and take her to the park. Plaintiff has a driver's license and will drive. She attends church regularly. AR 60-62.

In response to questioning from her attorney, Plaintiff testified that she can stand for about five to six minutes before she needs to sit down. When attending the gym, she would do up to 25 to 30 minutes on the elliptical and another 15 on the bike. She would then rest at home for thirty minutes to two hours. She spends most of the day on the couch because of the difficulty she has with standing and walking. AR 65-66.

When asked about her memory problems, Plaintiff reported that she has short-term memory problems. She will write down questions for her doctor and take notes. AR 66-67.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Paul Steven Ramirez. AR 71. The VE classified Plaintiff's past work as buyer, professional with an alternate title of broker. AR 73. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing at the light level with the following limitations: standing and walking limited to approximately six hours during an eight-hour day, sitting for approximately six hours during an eight-hour day with normal breaks, occasional pushing and pulling with the left lower extremity, occasional ladders, ropes and scaffolds, occasional crouching, kneeling and crawling, frequent ramps and stairs, balancing and stooping, and should avoid concentrated exposure to hazardous machinery and unprotected heights. The VE testified that this hypothetical person would be capable of performing Plaintiff's past work, as performed. AR 73-74.

For the second hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience with the same postural limits, use of extremities, and limitations with respect to hazardous machinery and heights as the first hypothetical, but is limited to frequent bilateral handling of objects, fingering and feeling. The VE testified that this hypothetical person would be capable of performing Plaintiff's past work per both the Dictionary of Occupational Titles ("DOT") and as performed. AR 74-75.

For the third hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience who is capable of performing at the sedentary level with the following limitations: occasional pushing and pulling with the left lower extremity, occasional ladders, ropes, scaffolds, crouching, kneeling, and crawling, frequent ramps, stairs, balancing and stooping, frequent bilateral reaching, handling, fingering and feeling. This person also should avoid concentrated exposure to hazardous machinery and unprotected heights. The VE testified that this person would not be capable of performing Plaintiff's past work. However, Plaintiff would have transferrable skills, such as consulting with customers and buyers, training personnel and assisting buyers, approving advertising materials, and communicating with suppliers and merchants. These skills would transfer to occupations, such as customer service rep or secretary, clerical, but there would be substantial skills that the person would have to learn. AR 75-78.

For the next hypothetical, the ALJ asked the VE if there would be jobs available for the person in hypothetical two if that the person would have three or more unexcused absences per month. The VE testified that this additional limitation would preclude all work. Alternatively, if the person was unable to engage in sustained work activity on a regular and continuing basis for eight hours a day/five days a week or for a 40-hour workweek, then there would not be jobs for that person. AR 78.

For the next hypothetical, Plaintiff's attorney asked the VE to consider the person in hypothetical one who could only receive information or instructions through written communication and would not have to remember auditory instructions. The VE testified that this person could not perform Plaintiff's past work and there would not be any transferrable skills to that hypothetical. AR 79-80.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 13-24. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 1, 2012, her

5

alleged onset date. AR 15. The ALJ identified arthritis and meniscus tear of the bilateral knees status post left knee surgery, degenerative disc disease of the lumbar spine, arthritis of the bilateral hands, diabetes mellitus with peripheral neuropathy, obstructive sleep apnea and obesity as severe impairments. AR 15-19. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 19. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work and could stand and walk for six hours in an 8-hour workday and sit for six hours in an 8-hour workday with normal breaks. However, she was limited to only occasional pushing and pulling with the left lower extremity, occasional crouching, kneeling, crawling and climbing ladders, ropes and scaffolds, frequent reaching, handling and fingering bilaterally, and must avoid concentrated exposure to hazardous machinery and unprotected heights. AR 19-23. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a buyer. AR 23-24. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 24.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff argues that the ALJ erred by (1) improperly rejecting the opinion of her treating physician, Dr. Baltej Dosanjh; (2) improperly rejecting Plaintiff's testimony; and (3) improperly rejecting the lay witness testimony. Plaintiff also argues that the ALJ's step-four finding that she could perform her past relevant work is not supported by substantial evidence.

# DISCUSSION[3]

## A. Step-Two Finding – Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Dosanjh, at step two of the sequential evaluation in finding her depression and anxiety non-severe. (Doc. No. 11 at 13.)

At step two, a claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 404.1522(a), (b), 416.921(a), 416.922(a), (b).

Here, the ALJ determined at step two that Plaintiff's "depression, anxiety and memory loss, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." AR 17. Plaintiff now argues that that the ALJ's determination was in error because he assigned little weight to the mental restrictions assessed by Dr. Dosanjh, who opined that Plaintiff was incapable of even "low stress" work and that her symptoms frequently were severe enough to interfere with the attention and concentration necessary to sustain simple, repetitive work tasks. AR 956-58.

In discounting Dr. Dosanjh's opinion, the ALJ reasoned as follows:

> This opinion understates the claimant's mental capacity and is given little weight because it is contradicted by the generally adequate mental functioning that the claimant exhibited throughout the adjudicated period (Exhibits 4F, 5F, 6F, 7F, 10F, 17F, 19F and 20F). In addition, the opinion is inconsistent with the effectiveness of the counseling that the claimant has received (Exhibits 19F/8, 19F/13, and hearing testimony). Moreover, the opinion is inconsistent with the claimant's relatively normal daily living activities and social activities as discussed above (Exhibits 5E, 5F/16, 9F, 10F, 17F/185, and hearing testimony). Furthermore, there is little evidence that Dr. Dosanjh has specialized expertise on mental impairments.

AR 18. Plaintiff appears to challenge only one of the ALJ's stated reasons for rejecting Dr. Dosanjh's opinion, to wit, that Dr. Dosanjh was not a mental health specialist. (Doc. 11 at 12-13.) Even if this reason was in error, it is harmless given the ALJ's other unchallenged reasons for assigning little weight to Dr. Dosanjh's opinion. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (indicating error harmless if it is nonprejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination").

Plaintiff suggests that Dr. Dosanjh's treatment notes indicate that Plaintiff's physical and mental illnesses exacerbate one another. However, Plaintiff does not point to any treatment records from Dr. Dosanjh indicating that Plaintiff had limits in concentration or attention or that her depression and anxiety significantly limited her ability to do basic work activities. (Doc. 11 at 13.) Upon review, Dr. Dosanjh's treatment records generally do not contain any objective findings to support such mental limitations. AR 963-66, 974-79, 986-89, 991-94, 995, 1000, 1015.

Plaintiff also suggests that another of Plaintiff's examining doctors, Peter Gaines, M.D., opined that Plaintiff's depression and side effects of her medication could be contributing to her experience of memory loss. (Doc. No. 11 at 13, citing AR 1346.) Plaintiff's reference to Dr. Gaines' treatment records is not persuasive. Dr. Gaines expressly noted in those same records that Plaintiff scored a 29/30 on mental status examination "making it unlikely that she has memory deficits." AR 1346. Dr. Gaines further opined that any cognitive impairment was "mild," and Plaintiff was "[u]nlikely to have major cognitive or memory deficits." *Id.* Although Dr. Gaines acknowledged that Plaintiff had "a degree of depression," he also noted that this was "improving" with psychiatric treatment. *Id.* Plaintiff has not disputed that her depression improved with treatment, and Plaintiff confirmed such improvement in her hearing testimony. AR 50-51.

Additionally, in discounting Dr. Dosanjh's opinion, the ALJ gave substantial weight to the opinion of the consultative examiner, Dr. Michael Cohn, who determined that Plaintiff's concentration, persistence and pace were adequate, and that she had no evidence of memory problems or psychiatric illness. AR 18, 721-25. The ALJ was entitled to rely on the opinion of the consultative examiner, which was based on an independent examination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings alone was substantial evidence for rejecting conflicting opinion from a treating source); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Plaintiff has not challenged the findings of the consultative psychiatric evaluation.

Accordingly, the Court finds that the ALJ did not err at step two in finding that Plaintiff's depression, anxiety and memory loss were not severe impairments.

**B.     Physical RFC – Treating Physician**

Plaintiff next argues that the ALJ erred in assigning little weight to the physical restrictions assessed by her treating physician, Dr. Dosanjh. (Doc. No. 11 at 13.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a

treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, Dr. Dosanjh completed a Physical Residual Functional Capacity Questionnaire form on January 7, 2016. AR 956-59. Dr. Dosanjh opined that Plaintiff could sit 30 minutes and stand 15 minutes at one time. She could stand/walk about 2 hours total out of 8 and could sit about 4 hours total out of 8. AR 957-58. She also would require at least 1-2 unscheduled breaks every two hours. She occasionally could lift less than 10 pounds, but never could lift 10, 20 or 50 pounds. She occasionally could twist, rarely stoop/bend, and never crouch, climb ladders or climb stairs. She did not have any limitations with repetitive reaching, handling or fingering. Dr. Dosanjh estimated that, on average, Plaintiff would be absent from work as result of her impairments or treatment more than 4 days per month. She also had environmental limitations to cold weather. AR 958-59.

Dr. Dosanjh's opinion was contradicted by the opinion of the consultative examiner, Dr. Tomas Rios, who opined in April 2014 that Plaintiff could stand and walk six hours, sit without limitation, could lift and carry 50 pounds occasionally, 25 pounds frequently, could climb, balance, stoop, kneel, crouch and crawl frequently, and could reach, hand, finger, and feel frequently. AR 714-18.

Dr. Dosanjh's opinion also was contradicted by the opinions of the state agency physicians, Dr. Dr. C. Bullard and Dr. E. Wong. In June 2014, Dr. Bullard opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand/walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, frequently could climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. AR 89-90, 100-01. In October 2014, Dr. Wong opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds

frequently, could stand/walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. She was limited to occasional pushing and pulling with her lower left extremity, but frequently could climb ramps/stairs, balance, and stoop, and occasionally could climb ladders/ropes/scaffolds, kneel, crouch and crawl. She also must avoid concentrated exposure to hazards, such as machinery and heights. AR 117-18, 133-34.

Because Dr. Dosanjh's opinion was contradicted by Drs. Rios, Bullard and Wong, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject that opinion. In evaluating Dr. Dosanjh's opinion, the ALJ reasoned as follows:

> Baltej Dosanjh, M.D., a treating physician, stated that the claimant was limited to less than sedentary exertion, would require numerous unscheduled breaks, could never climb or crouch, could only rarely stoop and occasionally twist, should avoid cold weather, and would be absent from work more than 4 days per month []. This opinion understates the claimant's physical capacity and is given little weight because it is contradicted by the adequate physical functioning that the claimant exhibited during the Internal Medicine Consultative Examination conducted on April 30, 2014 []. In addition, the opinion is inconsistent with the general effectiveness of the treatment for the claimant's knee disorders, degenerative disc disease, diabetes, and Obstructive Sleep Apnea (OSA) (Exhibits 2F/2, 7F/59, 9F/1, 15F, 17F/6, 17F/29, 17F/40, and hearing testimony). Moreover, the opinion is contradicted by the general absence of positive findings or signs concerning the claimant's hand arthritis or peripheral neuropathy in the objective medical evidence. Furthermore, the opinion is inconsistent with the routine and conservative nature of the treatment for the claimant's hand arthritis and diabetes. Finally, the opinion is inconsistent with the claimant's activities of daily living as described above, which indicate some physical capacity (Exhibits 5E, 9F, 10F, 15F, 17F, and hearing testimony).

AR 23.

Plaintiff contends that the ALJ erred in discounting Dr. Dosanjh's opinion because Plaintiff's activities of daily living "do not demonstrate an ability to sustain even sedentary activity for a full work day or work week and are not inconsistent with Dr. Dosanjh's assessed limitations." (Doc. No. 11 at 13.) The Court disagrees.

An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's reported daily activities. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from

11

marked limitations in part because the claimant's reported activities of daily living contradicted that conclusion).

In this instance, the ALJ considered the contrast between Dr. Dosanjh's opinion that Plaintiff could not perform even sedentary work with Plaintiff's described daily activities. These activities included independent personal care and household chores, such as preparing meals, cleaning, and doing laundry, driving a car, and going to the gym and engaging in physical exercise at least several times a week. AR 21-22. The ALJ's determination is supported by substantial evidence in the record. Plaintiff testified that she could bathe, shower, get dressed, help with food preparation, do laundry, go to the gym and use the elliptical, bikes and leg press. She also helped her granddaughter with homework, attended school, drove for shopping, to the doctor and between Modesto and Stockton, and attended church. AR 52-60. Further, physical therapy records from August to November 2015, pre-knee replacement, variously reflected that Plaintiff did home exercises, went to the gym, worked out by riding a bike or "walking for a couple miles," walked with her grandkids and did some "light jogging" with them, worked on the elliptical for 45 minutes, walked 3 miles, AR 918, 920, 922, 935, 942, 944, 946, 950, 953. The Court therefore finds that the ALJ properly discounted Dr. Dosanjh's extreme opinion based, in part, on Plaintiff's activities of daily living.

Plaintiff also argues that the ALJ erred because her "generally adequate functioning during one consultative examination does not amount to substantial evidence to discount her treating doctor's observations of her functioning over the course of at least two years of treatment." (Doc. No. 11 at 13.) However, the ALJ was entitled to rely on the opinion of the consultative examiner. *See Tonapetyan*, 242 F.3d at 1149. Plaintiff asserts that because the consultative examination took place in April 2014, the examiner did not take into account the worsening of her knee and lumbar spine impairments, her attempts at improvement through conservative treatment, her eventual knee replacement surgery shortly before the hearing in 2016, and MRI scans of her knees and back in 2015. (Doc. No. 11 at 13-14.)

Even if the ALJ erred in relying on the 2014 opinion, Plaintiff has not challenged the ALJ's other reasons for discounting Dr. Dosanjh's opinion, including that Dr. Dosanjh's opinion was inconsistent with the general effectiveness of treatment for Plaintiff's knee disorders, degenerative

12

disc disease, diabetes and obstructive sleep apnea. AR 23. Impairments that can be eliminated by treatment are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d at1001, 1006 (9th Cir. 2006). An ALJ may reasonably assign little weight to a treating physician's opinion that is not representative of a claimant's long-term functioning due to subsequent improvement in his or her condition. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Indeed, an ALJ may reasonably cite a claimant's effective treatment as a reason to discount the extreme limitations posited by a treating source. *See Senko v. Astrue*, 279 Fed.App'x. 509, 511 (9th Cir. May 22, 2008) (unpublished) (finding ALJ properly rejected treating doctor's opinion where opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications"). According to the record, Plaintiff is no longer diabetic, and her sleep apnea was addressed and improved with a CPAP machine. AR 48, 352, 560, 714, 915, 966, 989, 1000, 1196. She only takes medication for her back, and both her back and knees had improved functioning with physical therapy, exercise, medication and knee injection treatment. AR 43, 49, 914-16, 918, 923, 925, 927, 929, 933, 935, 937, 939, 942, 946, 950-52, 1152, 1181. Physical therapy records from August 2015 to November 2015 indicated that Plaintiff had normal ranges of motion and negative orthopedic tests. AR 915 (normal range of motion in lumbar spine and knees and negative orthopedic testing), 922-23 (same), 939-40 (lumbar spine movement was within normal limits, normal range of motion in knees and negative orthopedic tests), 950-51 (normal range of motion in knees, lumbar spine movements within normal limits, negative knee orthopedic tests; Plaintiff reported that she rides the bike or walks for a couple of miles), 953 (same). Additionally, her obesity and knee problems were addressed through surgical intervention. AR 41, 70, 1146, 1375-76, 1377, 1378-80.

Further, the ALJ discounted Dr. Dosanjh's opinion because it was contradicted by the absence of positive findings or signs concerning the claimant's hand arthritis or peripheral neuropathy. AR 23. An ALJ may properly reject a treating physician's opinion that is unsupported by clinical findings. *See Kohansby v. Berryhill*, 697 Fed.App'x 516, 517 (9th Cir. 2017) ("The ALJ provided specific and legitimate reasons supported by substantial evidence for assigning little weight to Dr. Gritzka's opinion: (1) objective findings such as MRI and x-ray reports and treatment notes support the rejection of Dr. Gritzka's opinion that Kohansby could not perform "sedentary work"); *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Tonapetyan*, 242 F.3d at 1149 (same). According to the record, Plaintiff generally demonstrated normal neurologic function, and there were no relevant positive findings from diagnostic testing regarding her hands or peripheral neuropathy. AR 21, 438, 457, 978, 1086, 1195, 1363-64, 1366.

The ALJ also considered that Dr. Dosanjh's opinion was inconsistent with the routine and conservative nature of her treatment for hand arthritis and diabetes. AR 21, 23; *see also* AR 47-48, 966, 978, 989, 1000, 437, 447. A conservative course of treatment can also justify discounting a treating physician's finding of total disability. *Rollins*, 261 F.3d at 856 (noting that treating physician's conservative course of treatment was not the sort of recommendation one would expect to accompany a finding that the claimant was totally disabled).

Based on the above, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount the physical limitations assessed by her treating physician, Dr. Dosanjh.

**B.     Evaluation of Plaintiff's Testimony**

Plaintiff next argues that the ALJ improperly rejected her subjective testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 20. In so doing, the Court finds that the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony.

14

For instance, the ALJ appropriately considered that Plaintiff's statements were not consistent with the objective evidence, including lack of diagnostic findings related to her hands and her neuropathy and well-controlled diabetes and sleep apnea. AR 20-21. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider. *See Burch v. Barhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also appropriately considered that physical therapy and medications were effective in reducing Plaintiff's back and knee pain and in improving her functioning. AR 20. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). As previously noted, impairments that can be effectively controlled by medication or treatment are not considered disabling for purposes of Social Security benefits. *Warre*, 439 F.3d at 1006. In this case, the record reflects that Plaintiff had improved functioning in her back and knees with physical therapy, exercise, medication and knee injection treatment. AR 49, 914-16, 918, 922-23, 925, 927, 929, 933, 935, 937, 939-40, 942, 946, 950-52, 953, 1152, 1181. Although Plaintiff ultimately underwent knee replacement surgery, the cited pre-surgery records reflect that physical therapy and knee injections improved her functioning.

Further, the ALJ appropriately considered that Plaintiff had "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 21-22. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2012). Here, the ALJ could reasonably conclude that Plaintiff's activities undermined her claims that she was unable to perform even sedentary work. As discussed, the ALJ noted that Plaintiff was independent in her personal care and could perform household chores, such as cleaning and doing laundry. She also was able to drive a car, which required considerable motor function, and attended the gym and engaged in physical exercise several times a week. AR 22, 52-60. Plaintiff's activities, identified in greater detail above, are more extensive than the level of activity the Ninth Circuit has previously found to

undermine allegations of totally disabling symptoms. *See, e.g., Burch*, 400 F.3d at 680–81 (affirming the ALJ's finding that a claimant was "quite functional" because she could cook, clean, shop, interact with others, and manage finances). Even where Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Additionally, the ALJ considered that Plaintiff "showed no persuasive evidence of debilitating pain, discomfort, or fatigue while testifying at the hearing." AR 22. Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall evaluation. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Here, the ALJ acknowledged that the hearing was short-lived and could not be considered a conclusive indicator of the claimant's overall level of physical problems a day-to-day basis. Nevertheless, the ALJ permissibly determined that the apparent lack of serious physical difficulties during the hearing was "somewhat inconsistent with the alleged severity of her symptoms." AR. 22.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

### C. Evaluation of Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected the testimony of her mother, Thelma Gentry. (Doc. No. 11 at 17-18.) Ms. Gentry completed a Third-Party Function report on March 18, 2014. AR 289-97. She indicated that Plaintiff had difficulty with lifting, bending, reaching, walking, kneeling, stair climbing and memory, and she could not drive or walk long distances. AR 292, 294. She also may need spoken instructions repeated and does not handle stress well. AR 294-95.

An ALJ must take into account competent lay witness testimony. *Molina*, 674 F.3d at 1114; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.' " *Molina*, 674 F.3d at 1114 (citation omitted). An ALJ is not required to discuss every witness' testimony on an individualized,

witness-by-witness basis. *Id.* Rather, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Here, the ALJ considered the third-party report prepared by Plaintiff's mother, which corroborated Plaintiff's allegations. AR 23. The ALJ assigned this report "little weight for the same reasons provided above for Dr. Dosanjh's opinion." AR 23. As the ALJ provided germane reasons for rejecting Dr. Dosanjh's opinion, the Court finds that the ALJ also provided reasons germane to discount the testimony of Plaintiff's mother. *See Molina*, 674 F.3d at 1114.

Moreover, because the third-party statement of Plaintiff's mother was of the same general nature as Plaintiff's subjective complaints, the ALJ's valid reasons for discounting Plaintiff's statements apply equally her mother's similar statements. *Molina*, 674 F.3d at 1122 ("given that the lay witness testimony described the same limitations as Molina's own testimony, ... the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony"); *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Accordingly, the Court finds that the ALJ did not commit reversible error in his evaluation of the lay witness testimony.

### D. Step-Four Finding

As a final matter, Plaintiff argues that the ALJ's finding at step four that she could perform her past relevant work is not supported by substantial evidence. (Doc. No. 11 at 18-19.)

At step four of the disability determination, it is the claimant's burden to demonstrate she cannot perform her past relevant work. *Carmickle*, 533 F.3d at 1166 (citations omitted); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). If a claimant can perform her past relevant work, then she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

Here, the ALJ found that Plaintiff had the RFC to perform light work, and the VE testified that a hypothetical individual with a limitation to light work could perform Plaintiff's past relevant work as a buyer. AR 21, 24. In asserting error at step four, Plaintiff reasserts that the ALJ erred in his evaluation of Plaintiff's mental and physical impairments and the RFC did not account for all of her limitations as expressed in her testimony, described by the lay witness and assessed by Dr. Dosanjh. (Doc. No. 11 at 18-19.) As discussed above, the Court concludes that the ALJ did not err in his evaluation of Plaintiff's mental and physical impairments, and in turn, did not err at step four of the sequential evaluation. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.").

Plaintiff also maintains that "given her recent knee replacement surgery and the need for a second surgery on her other knee, [she] is not able to perform the standing and walking required for light work." (Doc. No. 11 at 19.) However, Plaintiff has not demonstrated that her knee surgery has resulted in, or that future surgery will result in, disabling limitations for 12 consecutive months. *See Batson*, 359 F.3d at 1193-94 ("To establish whether he qualifies for benefits, [the claimant] has the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months'"); *Burch*, 400 F.3d at 679 (same).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

////

////

////

////

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Marion Gentry.

IT IS SO ORDERED.

Dated: __**March 27, 2019**__        /s/ *Barbara A. McAuliffe*
                                                         UNITED STATES MAGISTRATE JUDGE